474 P.2d 193

**STATE of Arizona, Appellee,**

v.

**Dwight Simmons PALMER, Appellant.**

No. 1 CA–CR 80.

Court of Appeals of Arizona,
Division 1,
Department A.

Sept. 16, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., for appellee.

Charles S. Pizzo, Phoenix, for appellant.

DONOFRIO, Presiding Judge.

On April 15, 1969, defendant Palmer filed a petition in the Arizona Supreme Court for a Writ of Habeas Corpus, Cause No. H–373, and the Court on May 13, 1969, entered the following order:

"DENYING petition for Writ of Habeas Corpus, with the understanding that defendant may make application to the Court of Appeals to set aside its mandate, and for further consideration under Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493."

Pursuant thereto this Court reopened the appeal and ordered its mandate of June 9, 1966, vacated. The opinion in State v. Palmer, 3 Ariz.App. 218, 413 P.2d 277 (1966) is vacated and the cause reconsidered under Anders, supra.

Because of the involved nature of this case it becomes necessary to set forth the background in some detail.

On May 2, 1961, in the Superior Court of Maricopa County the defendant pleaded guilty to the crime of burglary in the second degree. At the time of the taking of the plea the defendant was represented by counsel. However, the record neither indicates whether defendant was informed by the court of the consequences of his guilty plea, nor whether he in fact knew the consequences thereof. The Court adjudged the defendant guilty as charged, and on May 17, 1961, imposition of sentence was suspended for 18 months and he was placed on probation. Less than 18 months later defendant's probation was revoked for violation of conditions, and on September 18, 1962, he was sentenced to not less than four and one-half nor more than five years in the Arizona State Prison.

On November 15, 1962, defendant timely filed notice of appeal in forma pauperis, and a day later his attorney was permitted to withdraw and an order was entered to

that effect. New counsel was appointed on December 6, 1962, to represent him in pursuing the appeal. This new counsel conferred with the defendant and with the defendant's former counsel and decided that the appeal "would not be in the best interest of Defendant." This decision was reported informally to the Superior Court and the matter was dropped. Thereafter defendant brought his appeal in *propria persona*. The record on appeal was received by this Court on March 7, 1966. By the time counsel was reappointed to undertake the defense on appeal, March 2, 1966, Palmer had been released from the State Prison for approximately eight months. Counsel's brief after an abbreviated statement of facts and assignments of error concluded, after a complete examination of the record, that no error could be found and that the defendant's constitutional rights were protected at all stages of the proceedings.

The Superior Court's judgment and sentence was affirmed by this Court on April 22, 1966. State v. Palmer, supra. Notice of denial of petition for rehearing was given May 23, 1966, and on June 9, 1966, the order and mandate was issued by this Court affirming the judgment and sentence, no petition for review having been filed.

The defendant, on April 21, 1966, in another cause, No. 47715, pleaded guilty to a charge of first degree burglary and was convicted and sentenced on May 2, 1966, to not less than 10 nor more than 23 years in the Arizona State Prison under authority of Arizona's "Recidivist" Statute, A.R.S. § 13-1649. The prior conviction relied upon in that case involved the instant conviction. See State ex rel Corbin v. Court of Appeals, Division 1, 103 Ariz. 315, 441 P.2d 544 (1968).

Inasmuch as the record in the instant appeal was silent as to whether the defendant was informed of the consequences of entering a plea of guilty, and also silent as to whether at the time he entered his plea he knew the consequences of such a plea, we made an order directing the trial court to conduct a hearing and enter its findings in

relation thereto, together with its recommendations, if any. The hearing was to cover the voluntariness of the plea entered May 2, 1961. As authority for the procedure see State v. Griswold, 105 Ariz. 1, 457 P.2d 331 (1969); State v. Kruchten, 101 Ariz. 186, 417 P.2d 510 (1966); State v. Janovic, 101 Ariz. 203, 417 P.2d 527 (1966); State v. Turnbaugh, 10 Ariz.App. 179, 457 P.2d 719 (1969).

It is to be noted that the May 2 arraignment proceedings were before The Hon. E. R. Thurman, now retired, and the sentencing set by Judge Thurman before The Hon. Henry S. Stevens who is now sitting on the Court of Appeals. The investigative hearing, therefore, was directed to and heard by The Hon. Charles L. Hardy, Presiding Judge of the Maricopa County Superior Court.

On June 26, 1970, the Presiding Judge concluded the matter referred to him and made his findings, conclusion and recommendation. The recommendation was that defendant's conviction be set aside, and based upon the hearing had before him, he made the following findings of fact and conclusion which are set forth in their entirety as they indicate the thoroughness with which the matter was considered:

"1. On April 11, 1961, Criminal Cause No. 37995, in which the defendant above-named had been accused of the crime of grand theft, was pending in this court.

"2. On April 11, 1961, a criminal complaint was filed in Northeast Phoenix Justice Precinct accusing the defendant of first degree burglary.

"3. The defendant was arrested on April 13, 1961, and brought before a magistrate, who set his preliminary hearing for April 19th.

"4. Counsel for the defendant and a deputy county attorney entered into a plea bargain whereby it was agreed that (a) an amended complaint would be filed charging the defendant with second degree burglary, (b) the defendant would waive a preliminary hearing, (c) the defendant would plead guilty at the time of

arraignment on the information in Superior Court and (d) Criminal Cause No. 37995 would be dismissed.

"5. On April 17, 1961, an amended complaint was filed in the Justice Court charging the defendant with second degree burglary and on April 19 he waived his preliminary examination on the amended complaint.

"6. The defendant was arraigned on the information on May 2, 1961, and the clerk's minutes of the arraignment recite that a plea of guilty was entered to second degree burglary.

"7. On May 1, 1961, Criminal Cause No. 37995 was dismissed by the court on motion of the county attorney and the reason given therefor was 'the defendant is entering a plea of guilty to cause number 38139' (the above-entitled cause).

"8. The defendant was not present when the plea bargain was negotiated.

"9. No court reporter was present at the arraignment of the defendant in this court on May 2, 1961.

"10. The clerk's minutes of the arraignment of the defendant on May 2, 1961, do not indicate that the court made any inquiry as to whether the defendant fully understood the meaning of a guilty plea and its consequences.

"11. Announcement of the plea of guilty was not made by the defendant personally but by his counsel at the arraignment on May 2, 1961.

"12. At the time that a plea of guilty was entered in behalf of the defendant on May 2, 1961, he had not been advised of the meaning of such a plea and its consequences.

"13. At the time that a plea of guilty was entered in behalf of the defendant on May 2, 1961, he did not fully understand the meaning of the plea and its consequences.

"14. At all times in 1961 the defendant relied completely upon his counsel to make whatever decisions counsel considered necessary for the best interests of his client.

"Based on the foregoing findings of fact the court concludes, as a matter of law, that the defendant's plea of guilty was not voluntary since the defendant did not have full knowledge of his legal rights and of the consequences of his act."

The United States Supreme Court, in dealing with the question of waiver of the Sixth Amendment right to counsel, held in Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70, (1962) :

"* * * Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not a waiver." 369 U.S. at 516, 82 S.Ct. at 890.

In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) the Supreme Court applied the "silent record" test of Carnley in determining whether or not a guilty plea is made voluntarily, and noted that by pleading guilty a defendant is simultaneously waiving three fundamental rights:

"* * * First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. Second, is the right to trial by jury. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. Third, is the right to confront one's accusers. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. We cannot presume a waiver of these three important federal rights from a silent record." 395 U.S. at 243, 89 S.Ct. at 1712.

The opinion further stated:

"What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full under-

standing of what the plea connotes and of its consequence. * * *" 395 U.S. at 243–244, 89 S.Ct. at 1712.

Thus, Boykin requires that the record must clearly show that a guilty plea is voluntarily made.

■ The Arizona Supreme Court, in State v. Griswold, supra, held that the Boykin voluntariness standards were to have prospective application only. Thus, the Boykin standards do not apply to the instant case. In Griswold, however, it was implicitly recognized that even absent application of the Boykin mandate, there must be a determination of voluntariness:

"* * * There must always be reasons why a defendant chooses to plead guilty. But this does not mean that because there are reasons, the choice made is to be considered involuntary within legal contemplation. Every person is daily, perhaps almost momentarily, required to choose between different courses of action. Some choices are made from very compelling circumstances which may in fact in the end give no reasonable alternative. But if they are freely made, that is, not under physical duress, *and with full knowledge of the consequences,* then it must be said that the choice is voluntarily made. As [the defendant] testified, 'I thought anything would be preferable to the death penalty.'" (Emphasis supplied) 457 P.2d at 335.

We interpret Griswold to hold that where inquiry is made into the circumstances surrounding a plea of guilty entered prior to Boykin, the plea would not be set aside if the facts upon which the plea rested could be determined favorably to the State.

■ Though it should be noted that the judges who presided over the arraignment and sentencing in this cause followed procedures which had been accepted by the courts of this state for a number of years, the hearing before the Presiding Judge failed to reveal evidence to support a determination of voluntariness within the meaning of the law. The Presiding Judge was unable to find that the defendant was ad-

vised or that he fully understood the meaning of his guilty plea and its consequences. We affirm the findings and conclusion of the trial court.

The judgment and sentence is vacated and the cause remanded to the trial court for further processing not inconsistent with this opinion. We deem it unnecessary here to discuss the other questions which were raised in the briefs.

CAMERON and HAIRE, JJ., concur.